**IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DIVISION**

| | |
|---|---|
| IN RE: AMY C. LOCKE, Debtor | CASE NO. 4:18-bk-10119<br>CHAPTER 13 |
| KATELYN LOCKE | PLAINTIFF |
| V.             AP NO: 4:19-ap-01005 | |
| AMY C. LOCKE | DEFENDANT |
| AMY C. LOCKE | THIRD PARTY PLAINTIFF/<br>COUNTERCLAIMANT |
| V. | |
| KATELYN LOCKE; OGLES LAW FIRM, P.A. AND JOHN OGLES | THIRD PARTY DEFENDANTS |

**MOTION FOR *NUNC PRO TUNC* ORDER LIFTING OR
ANNULLING AUTOMATIC STAY**

COME NOW Katelyn Locke, Ogles Law Firm, P.A. and John Ogles, by and through their attorney, John Ogles, and for their Motion for *Nunc Pro Tunc* Order Lifting or Annulling Automatic Stay state:

1. On or about October 9, 2015 Amy Locke, as Guardian of the Estate of Katelyn Locke, was issued a check from State Farm Life Insurance Company for the sum of $16,416.85.

2. On October 9, 2015 Amy Locke stood in a fiduciary relationship to her ward, Katelyn Locke.

3. Amy Locke deposited the State Farm check into her personal account, not a guardianship account, and thereafter used the funds for purposes other than in the interests of her ward, Katelyn Locke.

4. On January 10, 2018, being fully aware that Katelyn Locke intended to file an action to recover the State Farm funds, Amy Locke filed a petition for protection from creditors pursuant to Chapter 13 of the Bankruptcy Code.

5. Amy Locke did not list Katelyn Locke as a creditor and did not provide Katelyn Locke or her attorney with notice of the bankruptcy.

6. On January 30, 2018 Katelyn Locke filed her lawsuit in Arkansas state court seeking money damages from Amy Locke and others.

7. On February 27, 2018 Amy Locke filed a *pro se* Answer to Katelyn Locke's complaint. Amy Locke made no mention of the pending Chapter 13 proceedings.

8. On October 18, 2018 the Arkansas state court entered judgment against Amy Locke in the amount of $19,066.93, which included pre-judgment interest. The judgment also provides for post-judgment interest at the rate of 10% per annum.

9. On December 17, 2018 Amy Locke amended her schedules to list Katelyn Locke as a creditor.

10. On December 19, 2018 Amy Locke, for the first time, provided notice to Katelyn Locke and her attorney that the Chapter 13 petition had been filed.

11. On January 15, 2019 Katelyn Locke filed this action seeking to have this Court declare Amy Locke's debt to Kately Locke non-dischargeable pursuant to 11 U.S.C.

§523(a)(6). The debt is likewise non-dischargeable pursuant to subjects (a)(2) and (a)(4).

12. On or about February 14, 2019 Amy Locke filed a counterclaim seeking to invoke the protections afforded by the automatic stay found at 11 U.S.C. §362.

13. While Katelyn Locke and her attorney may be in technical violation of the automatic stay, such violation occurred through no fault of their own and the violation could have been avoided had Amy Locke complied with the Bankruptcy Code's requirement that she list all her known creditors, including those debts which might be classified as contingent liabilities, and providing notice to all creditors, which would have, and should have included Katelyn Locke.

14. This is a proper case for retroactive nullification of the automatic stay and for this Court to issue a *nunc pro tunc* order lifting the stay as of the date of the filing of the state court complaint against Amy Locke.

15. This Adversary Proceeding was commenced for the purpose of having this Court declare that the debt owed Katelyn Locke is non-dischargeable. Whether the state court action was in violation of the stay or not, the fact remains the debt is one that is clearly non-dischargeable, a matter which this Court can decide based on collateral estoppel principles or by retrying the case within this Adversary Proceeding.

16. Application of the automatic stay to void the state court judgment would be a waste of judicial resources and cause needless delay and expense to the parties.

## MEMORANDUM OF LAW

Although an action in violation of the stay is technically void, the bankruptcy court

nevertheless has the power to validate it. It is important, in this regard, to distinguish between terminating the automatic stay and annulling it, either of which is permitted under 11 U.S.C. § 362(d). An order terminating the automatic stay only acts prospectively, but an order annulling the automatic stay *nunc pro tunc* acts retroactively to validate otherwise void actions taken post-petition. *Eastern Refractories Co.*, 157 F.3d 169 (2nd Cir. 1998); *In re Soares*, 107 F.3d 969 (1st Cir. 1997). The distinction may appear largely semantic, but it has a practical consequence. If the action is void *ab initio*, the party that wants to validate it (generally, the creditor) must move to annul the stay; but if it is voidable, the party seeking to avoid it (generally, the debtor) must seek relief. *In re Best Payphones, Inc.*, 279 B.R. 92 (Bankr. S.D.N.Y., 2002).

The circuits are split on whether actions taken in derogation of the automatic stay are merely "voidable" or, more accurately, "void." Some courts characterize unauthorized postpetition proceedings as "voidable." See, e.g., *Jones v. Garcia (In re Jones)*, 63 F.3d 411, 412 & n. 3 (5th Cir.1995), cert. denied, --- U.S. ----, 116 S.Ct. 1566, 134 L.Ed.2d 666 (1996); *Bronson v. United States*, 46 F.3d 1573, 1578-79 (Fed.Cir.1995); *Easley v. Pettibone Mich. Corp.*, 990 F.2d 905, 911 (6th Cir.1993). Other courts call such actions "void," but recognize that equitable considerations may alter some outcomes. See, e.g., *Siciliano*, 13 F.3d at 751; *In re Schwartz*, 954 F.2d 569, 571 (9th Cir.1992); *Job v. Calder (In re Calder)*, 907 F.2d 953, 956 (10th Cir.1990) (per curiam); *48th St. Steakhouse, Inc. v. Rockefeller Group, Inc. (In re 48th St. Steakhouse, Inc.)*, 835 F.2d 427, 431 (2d Cir.1987), cert. denied, 485 U.S. 1035, 108 S.Ct. 1596, 99 L.Ed.2d 910 (1988); *Albany Partners Ltd. v. Westbrook (In re*

*Albany Partners, Ltd.)*, 749 F.2d 670, 675 (11th Cir.1984). *Soares, In re*, 107 F.3d 969 (1st Cir., 1997)

Section 362(d) confers upon courts discretionary power in certain circumstances to terminate, annul, modify, or place conditions upon the automatic stay. In drafting the law, Congress chose to include both the power to terminate the stay and the power to annul it. When construing this language, courts must try to give independent meaning to each word. See *United States Dep't of Treasury v. Fabe,* 508 U.S. 491, 504 n. 6, 113 S.Ct. 2202, 2210 n. 6, 124 L.Ed.2d 449 (1993); *United States v. Ven-Fuel, Inc.*, 758 F.2d 741, 751-52 (1st Cir.1985). The only plausible distinction between the two verbs in this context is that terminating the stay blunts it prospectively, from the moment the court's order enters, whereas annulling the stay erases it retrospectively, as of some date prior to the entry of the court's order (reaching as far back as the date when the debtor filed the bankruptcy petition, if the court so elects). *Soares, In re*, supra.

Seen from this perspective, Congress' grant of a power of annulment is meaningful only if the court may thereby validate actions taken before the date on which the court rules. On any other construction, annulment lacks any independent significance; it merely replicates termination. It follows, therefore, that section 362(d) authorizes retroactive relief from the automatic stay. Accord *Siciliano,* 13 F.3d at 751; *Albany Partners*, 749 F.2d at 675; see also *Franklin Sav. Ass'n v. Office of Thrift Supervision*, 31 F.3d 1020, 1023 (10th Cir.1994) (recognizing the authority to annul the stay and thereby grant retroactive relief); *Sikes v. Global Marine, Inc.*, 881 F.2d 176, 178-79 (5th Cir.1989) (same); see generally 3

Collier on Bankruptcy, supra, p 362.11.

In *Soares, In re*, supra., the Court wrote:

When a creditor inadvertently violates the automatic stay in ignorance of a pending bankruptcy, courts sometimes have afforded retroactive relief. See, e.g., *Jones*, 63 F.3d at 412-13 (affirming retroactive validation of a foreclosure sale where the mortgagee had no notice of the bankruptcy filing); *Mutual Benefit Life Ins. Co. v. Pinetree, Ltd. (In re Pinetree, Ltd.)*, 876 F.2d 34, 37 (5th Cir.1989) (similar). By like token, debtors who act in bad faith may create situations that are ripe for retroactive relief. See, e.g., *Calder*, 907 F.2d at 956; *Easley,* 990 F.2d at 911; *Albany Partners*, 749 F.2d at 675-76.

In this District can be found the decision in *In re Webb*, 294 B.R. 850 (Bankr. E.D. Ark., 2003) where it was said:

The automatic stay of 11 U.S.C. § 362(a) lies at the heart of the Bankruptcy Code and "protects the debtor's assets while giving the debtor breathing room so that it can reorganize." *In re Kmart Corp.*, 285 B.R. 679, 688 (Bankr.N.D.Ill.2002). Section 362(a) provides, in part, that a bankruptcy petition "operates as a stay, applicable to all entities, of the commencement or continuation ... of a judicial, administrative, or other action against the debtor ... [and to] any act to obtain possession of the property of the estate ... or to exercise control over the property of the estate." 11 U.S.C. § 362(a)(1) and (3). Despite the sweeping statutory protection provided by the automatic stay, the Court of Appeals for the Eighth Circuit has found that "[b]ankruptcy courts have the power to annul an automatic stay retroactively for cause pursuant to 11 U.S.C. § 362(d)(1) in order to rehabilitate stay violations." *Bunch v. Hoffinger Indus. (In re Hoffinger Indus.),* 329 F.3d 948, 951-52 (8th Cir.2003) (citing *In re Siciliano*, 13 F.3d 748, 751 (3d Cir.1994); *Schwartz*, 954 F.2d at 572; *Vierkant*, 240 B.R. at 324).

Some courts have explained the factors that courts often weigh in determining whether to annul the automatic stay:

(1) if the creditor had actual or constructive knowledge of the bankruptcy filing and, therefore, of the stay, (2) if the debtor has acted in bad faith, (3) if there was equity in the property of the estate, (4) if the property was necessary for an effective reorganization, (5) if grounds for relief from the stay existed and a motion, if filed, would likely have been granted prior to the automatic

stay violation, (6) if failure to grant retroactive relief would cause unnecessary expense to the creditor, and (7) if the creditor has detrimentally changed its position on the basis of the action taken.

*In re Anderson*, 341 B.R. 365, 369–70 (Bankr.D.D.C.2006) (quoting *In re Stockwell*, 262 B.R. 275, 281 (Bankr.D.Vt.2001));  *Stancil v. Bradley Invs., LLC (In re Stancil)*, 487 B.R. 331 (Bankr. D.C., 2013).

Katelyn Locke and her attorney first became aware of the Chapter 13 proceedings in December 2018, ***after*** the state court judgment was entered.  Amy C. Locke literally hid her Chapter 13 petition for Kately Locke and her attorney for more than ten (10) months.  There is no equity in any property of the estate.  There is no property necessary for an effective reorganization.  Failure to grant retroactive relief will cause Katelyn Locke to have to prove up her fraud, defalcation and breach of fiduciary duties/embezzlement case a second time, an unnecessary expense.  This case fits almost all the factors which weigh in favor of granting retroactive relief.

Other courts have focused on two factors in determining whether cause exists to grant relief from the stay: (1) whether the creditor was aware of the bankruptcy petition; and (2) whether the debtor engaged in unreasonable or inequitable conduct, or prejudice would result to the creditor." *Mut. Benefit Life Ins. Co. v. Pinetree, Ltd. (In re Pinetree, Ltd.)*, 876 F.2d 34, 37 (5th Cir.1989); *In re Siciliano*, 167 B.R. 999, 1008–1009 (Bankr.E.D.Pa.1994) ("Most courts will only annul the stay ... if such action was taken by a creditor without its knowledge of the debtor's bankruptcy filing."); Stancil v. Bradley Invs., LLC (In re Stancil), supra.

Katelyn Locke and her attorney certainly had no knowledge of the bankruptcy

proceedings. It can easily be argued Amy C. Locke acted unreasonably and inequitably when she both failed to list Katelyn Locke as a creditor and then spent ten (10) months litigating in state court without ever disclosing her pending bankruptcy.

**CONCLUSION**

Amy C. Locke literally stole money from Katelyn Locke, using her fiduciary position as the court appointed guardian of Katelyn Locke's estate to do so. When she was sued in state court for her malfeasance, fraud and embezzlement she did not disclose - to anyone - that she had a Chapter 13 petition pending, despite multiple opportunities to do so. Now she asks this Bankruptcy Court - a court of equity - to shield her bad acts from the judgment entered in state court, a judgment she could have long ago potentially stopped had she been honest with the litigants and the court. Katelyn Locke asks this Court to exercise its inherent equitable discretion, as well as its authority pursuant to 11 U.S.C. 362(d), to retroactively annul the automatic stay to a date prior to the commencement of the state court action, thereby validating the state court judgment entered on October 18, 2018. Katelyn Locke further renews her prayer for relief in her Adversary Proceeding that the state court judgment be given preclusive effect pursuant to the doctrine of collateral estoppel and that the $19,066.93, plus accrued post-judgment interest, be declared non-dischargeable.

Respectfully submitted,

/s/John Ogles

---

John Ogles
Arkansas Bar No. 89003
Texas Bar No. 00797922
OGLES LAW FIRM, P.A.
200 S. Jeff Davis
P.O. Box 891
Jacksonville, AR 72078
(501) 982-8339
jogles@aol.com

## CERTIFICATE OF SERVICE

I, John Ogles, do hereby certify that a copy of the foregoing pleading was filed via the Court's e-filing system and served upon the following on this 20th day of February, 2019:

John A. Butler
Danecki Law Firm, PLC
PO Box 1938
Little Rock, AR 72203-1938

/s/John Ogles

---

John Ogles